# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

**SHELLEY REBECCA ROBERTS, ET AL.**          *CIVIL NO.  09-0162

**VERSUS**                                                          *JUDGE DOHERTY

**SMITHKLINE BEECHAM CORPORATION**          *MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Judge Doherty has referred the Motion for Voluntary Dismissal [rec. doc. 50] filed by

plaintiffs, Shelley Rebecca Roberts and Grady Roque Roberts ("the Roberts") to the

undersigned for Report and Recommendation. [ *See* rec. doc. 53].  Defendant, Smithkline

Beecham Corporation ("GSK") has filed Opposition, to which the Roberts have filed a

Reply. [rec. docs. 51 and 58].  Following oral argument of the Motion, the parties filed

Supplemental Memorandums in support of, and in opposition to, the Motion. [rec. docs. 64

and 65].

For the following reasons, it is recommended that the Motion for Voluntary

Dismissal [rec. doc. 50] be **GRANTED**, and accordingly, that this action be **DISMISSED**

**WITHOUT PREJUDICE**, conditioned on the plaintiffs' stipulation that they will not seek

punitive damages in Pennsylvania state court.

## BACKGROUND

The Roberts filed the instant action in this court on January 30, 2009, seeking

damages for personal injuries allegedly suffered as a result of GSK's negligence and

wrongful conduct in  manufacturing, merchandising, marketing, distribution and sale of

Paxil.  More specifically, the Roberts contend that Mrs. Robert's ingestion of Paxil when she was pregnant caused birth defects in the Roberts' minor child, T.J.R.

By this Motion, filed on September 24, 2009, the Roberts seek dismissal without prejudice so that they may refile their lawsuit in the Court of Common Pleas in Philadelphia County, Philadelphia, Pennsylvania, the venue where consolidated Paxil birth defect proceedings of hundreds of similar claims are pending in a mass tort program. The Roberts assert that their counsel, Nix and McIntyre, and defense counsel, King and Spalding, are currently litigating other similar cases in that venue, including a case involving claims by Louisiana residents, and that because of the consolidated and streamlined procedures of that court, this case may be more efficiently handled by the Pennsylvania court, with reduced likelihood of conflicting trial schedules and conflicting legal rulings, expending less time and resources by both the parties and the judiciary.

The Roberts further assert that discovery is in its very early stages, that other than general depositions which have been taken by cross-notice in other cases, no case-specific depositions have been taken or are set in this case, and that the sole production in this case has consisted of sales documents required by the Case Management Order issued by the Philadelphia court.  They further assert that no counter-claims have been asserted by GSK, no Scheduling Order has been issued by Judge Doherty in this case, no dispositive motions are pending, and they have received no adverse decisions of this court prior to filing the instant Motion.

2

Finally, in response to GSK's argument that should this case be refiled in Pennsylvania, GSK will face the risk of the possible application of Pennsylvania law which permits the recovery of punitive damages, the Roberts have agreed to stipulate that they will not seek punitive damages upon refiling this lawsuit in Pennsylvania. [rec. doc. 65].  Thus, the Roberts contend that GSK will suffer no legal prejudice as a result of the dismissal without prejudice of this action.

GSK opposes the Motion on grounds that critical witnesses, including the plaintiffs' Louisiana physicians, will be outside the subpoena power of the Pennsylvania court, hindering GSK from conducting full and fair discovery, and hindering GSK's ability to present the physician's  live testimony at trial for the jury to assess the witness' credibility. Moreover, GSK asserts that it will suffer prejudice because Pennsylvania law does not permit expert discovery depositions of testifying experts and the court has further required the scheduling of the depositions of plaintiff's physicians be conducted by the plaintiff to ensure no *ex-parte* communication with defense counsel.

GSK further contends that discovery is not in its early stages because, in addition the cross-noticed depositions taken in other cases and the parties' agreement to use depositions and documents taken and produced in the Pennsylvania consolidated mass tort action as well as those taken in a case pending in Oklahoma federal court, that initial disclosures, written Interrogatories, Requests for Production and Requests for Admissions have been propounded in this case. Finally, GSK asserts that this case has been filed in a convenient and proper forum and that  that transfer should not be effected for the convenience of

plaintiffs' counsel. In the alternative, GSK requests that in the event this court permits

dismissal, the dismissal should be conditioned on the plaintiff's right only to refile this

action in this court.

## LAW AND ANALYSIS

Rule 41(a)(2) provides:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the
> plaintiff's request only by court order, on terms that the court considers proper
> . . . Unless the order states otherwise, a dismissal under this paragraph (2) is
> without prejudice.

The United States Court of Appeals for the Fifth Circuit explained that, "as a general

rule, motions for voluntary dismissal should be freely granted unless the non-moving party

will suffer some plain legal prejudice other than the mere prospect of a second lawsuit."

*Elbaor v. Tripath Imaging*, 279 F.3d 314, 317 (5th Cir.2002) *citing  Manshack v.*

*Southwestern Elec. Power Co.*, 915 F.2d 172, 174 (5th  Cir.1990); *Ikospentakis v. Thalassic*

*Steamship*, 915 F.2d 176, 177-78 (5th  Cir. 1990). The primary purpose of Rule 41(a)(2) is to

"prevent voluntary dismissals which unfairly affect the other side, and to permit the

imposition of curative conditions." *Elbaor,* 279 F.3d at 317 *citing  Manshack,* 915 F.2d at

174 and  9 C. Wright & A. Miller, Federal Practice and Procedure § 2364, at 165 (1971).

Therefore, "faced with a Rule 41(a)(2) motion, the district court should first ask whether an

unconditional dismissal will cause the non-movant to suffer plain legal prejudice.*" Id.*

Substantial prejudice to the defendant may be shown if voluntary dismissal effectively strips the defendant of a defense that would otherwise be available. *Ikospentakis*, 915 F.2d at 177.  At least one district court has found that clear legal prejudice may be demonstrated if the defendant may be held liable for punitive damages in the new legal forum, when such damages were not available in the original forum, analogizing this difference to the loss of a defense. *Wallace v. General Motors*, 1996 WL 156856, *5 (E.D. La. 1996).

Moreover, where the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may refuse to grant a voluntary dismissal. *Elbaor*, 279 F.3d at 318 fn. 3 *citing Hartford Acc. & Indem. Co. v. Costa Lines Cargo Services, Inc.,* 903 F.2d 352, 360 (5th Cir.1990).  Further, one commentator has noted that after the plaintiff has suffered an adverse legal decision, for example, the grant of a motion for judgment as a matter of law, a greater showing must be made to obtain the grant of a voluntary dismissal.  *Wallace*, 1996 WL156856, at *3 *citing* Wright and Miller, 9 Federal Practice and Procedure, § 2364, pp.292-93; *Manshack*, 915 F.2d at 174 (noting that the grant of a voluntary dismissal after an adverse trial court ruling could inflict legal prejudice on the defendant).

However, if  the plaintiff may merely obtain some tactical advantage over the defendant in future litigation, this advantage is not ordinarily a bar to dismissal. *Ikospentakis,* 915 F.2d at 178 *citing Lecompte v. Mr. Chip, Inc*., 528 F.2d 601, 604 (5th Cir.

5

1976). The loss of a federal court venue is considered a tactical advantage not warranting denial of the Motion.  *Wallace*, 1996 WL 156856, *5 at fn. 2 *citing Manshack, supra*. Moreover, the fact that additional expense will be incurred in relitigating issues in another forum will not generally support a finding of "plain legal prejudice" and denial of a Rule 41(a)(2) motion to dismiss. *Elbaor,* 279 F.3d at 318 at fn. 3 *citing  Manshack*, 915 F.2d at 174.

If plain legal prejudice will not result from unconditional dismissal, the court should "generally, absent some evidence of abuse by the movant, grant the motion." *Elbaor*, 279 F.3d at 317.   If the district court concludes that granting the motion unconditionally will cause plain legal prejudice, it has two options, it can deny the motion outright or it can craft conditions that will cure the prejudice. *Id.* at 317-318. *See also* Wright & Miller, *supra*. (noting that  "[t]he court will examine the possibility that any harm to the defendant may be avoided by imposing terms and conditions on the dismissal.").  In so doing, a court may condition dismissal on grounds that a legal doctrine not be applied in the new venue or the dismissal will be rescinded.  *Ikospentakis*, 915 F.2d at 180 fn. 4 *citing McCall-Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir. 1985).

The grant or denial of a Rule 41(a)(2) Motion for Voluntary Dismissal is within the discretion of the court.  *Elbaor*, 279 F.3d at 317.  The following factors are considered by an appellate court when "determining whether a district court abused its discretion in denying a Rule 41(a)(2) motion: (1) the defendant's effort and the expense involved in preparing for

trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, (3) insufficient explanation of the need to take a dismissal, and (4) the fact that a motion for summary judgment has been filed by the defendant." *Id.* at 317 fn. 3 *citing Witzman v. Gross*, 148 F.3d 988, 992 (8th Cir. 1998).

In light of the above legal principles, it is clear that GSK will not suffer "plain legal prejudice" as a result of this court's grant of the Roberts' Motion for Voluntary Dismissal, particularly given their offer to stipulate that they will not seek punitive damages in Pennsylvania state court.

The undersigned gives little weight to GSK's argument that it will be prejudiced by its alleged difficulty in obtaining the depositions of plaintiff's prescribing and treating physicians, or that it will be unable to present them live at trial.  By its own admission, GSK acknowledges that there is a procedure for obtaining a commission to request issuance of a subpoena, and as noted by the Roberts, there is also a procedure for obtaining an open commission for this purpose.  These procedures are routinely utilized, and, according to the Roberts' counsel, these procedures are currently being utilized by defense counsel involved in the Pennsylvania mass tort action to take the depositions of the various plaintiffs' treating physicians all over the country.

Furthermore, while GSK may not be able to compel live testimony of the Roberts' treating physicians at trial, that is of little consequence, given that medical depositions are primarily presented by videotaped deposition, a form of presentation which allows the trier

7

of fact to view the witness' demeanor and make credibility determinations.

Finally, the alleged inability to obtain expert discovery depositions works no undue hardship on GSK, given that the rule is equally applicable to the plaintiffs.  Furthermore, the telephone discovery conferences conducted by the undersigned in this and the related case pending before this court, reveals that several of the testifying experts have already been deposed on cross-noticed depositions issued in other cases.   [*See* rec. doc. 27 and 31; *Boutte v. GSK*, 6:08cv721 (W.D. La.) rec. docs. 63 and 67].  Furthermore, the undersigned is aware of no authority finding that the inability to  take a discovery deposition constitutes "plain legal prejudice."  To the contrary, it would appear that such inability constitutes no more that the loss of a tactical advantage, which does not warrant denial of the Roberts' Motion. *See Ikospentakis,* 915 F.2d at 178 *citing Lecompte*, 528 F.2d at 604.

The undersigned is equally unimpressed by GSK's assertion that the Pennsylvania court, where the  mass tort action remains pending, is a less convenient forum than this federal district court.  As noted by counsel for the Roberts, both they and GSK's counsel are currently involved in litigation pending in the Pennsylvania state court.  It makes little sense for counsel to  duplicate their efforts in this court.  Moreover, it is certainly advantageous for a single court to coordinate discovery in this and the other numerous Paxil birth defect cases.  Additionally, allowing this case to be adjudicated in the Pennsylvania court, along with the hundreds of other cases currently pending there, will avoid potential scheduling conflicts for counsel and will preclude the issuance of conflicting decisions between this and

the Pennsylvania court on the same or substantially similar issues.  Indeed, several scheduling issues had to be addressed during the discovery conferences held before the undersigned judge to accommodate counsel.  Furthermore, there is no need to waste judicial resources by permitting analogous litigation to proceed before separate courts.  Finally, the loss of this federal venue does not warrant denial of the Roberts' Motion as GSK suggests.  *Wallace*, 1996 WL 156856, *5 at fn. 2 *citing Manshack, supra*.

The Roberts have not waited until a late stage in this proceeding to seek dismissal.  To the contrary, this action is in its early stages.  There is no Scheduling Order currently in effect and no trial date has been set.  Furthermore, while this court's docket reflects some activity, there has been no real motion practice before this court; there have been no dispositive or any significant rulings issued by this court, much less any ruling which could be construed as adverse to the Roberts.  Despite GSK's protestations to the contrary, it appears to the undersigned that GSK has not exerted significant time and effort into the defense of this action.  While routine written discovery has been propounded and depositions have been cross-noticed in other cases, there has been no case specific depositions taken in this case.

Moreover, the same written discovery would have been propounded and responded to regardless of the court in which the action was pending. Given the parties' agreement to use depositions and documents taken and produced in the Pennsylvania consolidated mass tort action and a case pending in Oklahoma federal court, it appears that the discovery obtained in this case can likewise be used when the case is refiled in Pennsylvania.  Even if

additional expense would be incurred in relitigating discovery issues in the Pennsylvania forum, which appears unlikely, such expense would not support a finding of "plain legal prejudice" warranting denial of the instant Rule 41(a)(2) Motion. *Elbaor,* 279 F.3d at 318 at fn. 3 *citing Manshack*, 915 F.2d at 174, *supra.* All of these reasons additionally militate in favor of the grant of a voluntary dismissal. *See Elbaor*, 279 F.3d at 318 fn. 3 *citing Hartford.,* 903 F.2d at 360, *supra*.

Indeed, the sole basis which may have justified a finding of "plain legal prejudice" warranting denial of the instant Motion, the potential for recovery of punitive damages, is no longer an issue. The Roberts have agreed to stipulate that they will not seek punitive damages upon refiling this case in Pennsylvania state court. [rec. doc. 65].

For the above reasons, the undersigned cannot find that the voluntary dismissal of this action will cause GSK to suffer "plain legal prejudice." Accordingly, the undersigned finds that the Motion for Voluntary Dismissal should be granted.

However, while the undersigned does not find that "plain legal prejudice" will result from the unconditional dismissal of this action, this court is authorized to craft conditions that will cure any potential prejudice to GSK. *Elbaor*, 279 F.3d at 317; Wright & Miller, *supra*. Therefore, to avoid and prevent the possibility of any harm to GSK as a result of the as of yet unresolved punitive damage issue, the undersigned recommends that this court condition its dismissal on the plaintiffs' stipulation not to seek punitive damages in Pennsylvania state court. *See Ikospentakis*, 915 F.2d at 180 fn.5 *citing McCall-Bey*, 777

F.2d at 1184, *supra*.

**CONCLUSION**

For the reasons stated above, **IT IS RECOMMENDED** the Motion for Voluntary Dismissal [rec. doc. 50] be **GRANTED**, and accordingly, that this action be **DISMISSED WITHOUT PREJUDICE,** conditioned on the plaintiffs' stipulation that they will not seek punitive damages in Pennsylvania state court.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by F.R.C.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Services Automobile Association*, 79 F.3d. 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed this 29th day of January, 2010, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

11
